UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
In re:

1990's CATERERS LTD.                           Case No.: 13-74884-AST
d/b/a VINA de VILLA CATERERS,            Chapter 7

                 Debtor.
-------------------------------------------------------------x

**DECISION AND ORDER TO DIRECT THE UNITED STATES MARSHALS TO TAKE RICHARD BIVONA INTO CUSTODY AND HOLD HIM IN THEIR CUSTODY UNTIL SUCH TIME AS HE PURGES HIS CIVIL CONTEMPT**

For the reasons set out herein, this Court has determined that an Order should be entered directing the United States Marshals Service to take Mr. Richard Bivona into their custody, as a coercive civil contempt sanction.

## Jurisdiction

This Court has jurisdiction over this core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(A), (B), (E) and (O), and 1334(b), and the Standing Orders of Reference in effect in the Eastern District of New York dated August 28, 1986, and as amended on December 5, 2012, but made effective *nunc pro tunc* as of June 23, 2011.  The following constitutes the Court's findings of fact and conclusions of law to the extent Rule 7052 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") so requires.[1]  *See* FED. R. BANKR. P. 7052

## Background and Procedural History

This case, which started as a questionable involuntary chapter 7 filing, is one in a series of bankruptcy filings which have been tainted with improprieties, and have been intermingled

---

[1] To the extent not addressed in the pleadings filed in this case, the Court's findings of fact regarding conduct in prior bankruptcy cases are derived from the public filings on those dockets. *Kavowras v. N.Y. Times Co.,* 328 F.3d 50, 57 (2d Cir. 2003) ("Judicial notice may be taken of public filings").

with multiple litigations involving this debtor, 1990's Caterers Ltd *aka* Vina de Villa Caterers ("Debtor"), its affiliates (collectively the "Debtor Entities"), and an entity known as MHRP Realty, LLC ("MHRP").  MHRP was the owner of and the landlord for the property located at 2005 Route 112, Medford, New York 11763 (the "Property"), at which the Debtor Entities operated a catering venue under a lease with MHRP (the "Lease").  Some of the litigious history involving the Debtor Entities with MHRP is set forth in this Court's Order concerning MHRP's request for sanctions (the "Sanctions Order") [dkt item 56]; this history includes an eviction proceeding commenced by MHRP and two voluntary chapter 11 bankruptcy filings by Debtor[2], the second of which was prejudicially dismissed by this Court.  The focus of this Order is Mr. Richard Bivona and his on-going, flagrant and open defiance of this Court's Orders in this bankruptcy case.

*Proceedings leading up to this bankruptcy case and the entry of an order for relief*

By way of brief background, on June 28, 2013, Debtor and MHRP entered into a stipulation for dismissal of the second 1990's chapter 11 bankruptcy case, which this Court so ordered, and provided that "[t]he dismissal of this case is with prejudice against the filing of a subsequent petition under Title 11 of the United States Code by this Debtor for a period of two (2) years from the date of this Order" (the "Prejudicial Dismissal Order").  [dkt item 26, Case No. 13-72354-ast]

After several litigation tactics failed, with eviction yet again looming after a failed attempt by Debtor to remove an eviction action to federal court,[3] and with Debtor still unable to

---

[2] Case Nos. 13-71842-ast; 13-72354-ast.

[3] On August 15, 2013, to stave off another effort by MHRP to consummate an eviction, Debtor removed a landlord tenant action between MHRP and Debtor from the District Court of Suffolk County to the U. S. District Court for the Eastern District of New York. [dkt item 9-2]  On August 26, 2013, the District Court *sua sponte* remanded the action back to the Suffolk County Court for lack of subject matter jurisdiction. [dkt item 9-3]

voluntarily file for bankruptcy relief, on September 24, 2013, Mr. Bivona, Mr. John DeJohn and Ms. Jacqualene Dyber[4] joined together as petitioning creditors to commence this involuntary chapter 7 bankruptcy case against Debtor (collectively, the "Petitioning Creditors"). As stated in the Sanctions Order, this involuntary case appeared to have been filed to circumvent the Prejudicial Dismissal Order.[5]

On October 9, 2013, this Court entered an Order granting MHRP stay relief to proceed with the eviction and pursue its state law remedies against Debtor. [dkt item 15]

On November 5, 2013, MHRP filed an emergency motion seeking, *inter alia*, entry of an order for relief and the immediate appointment of an interim chapter 7 trustee pursuant to § 303(g) (the "Emergency Motion"), based on its discovery that Debtor had conducted an auction sale of its assets at the Property on October 30, 2013. [dkt item 21] In order to avoid immediate and irreparable harm to the estate, that same day the Court entered an order (1) directing Debtor to show cause on November 19, 2013, as to why an interim chapter 7 trustee should not be appointed and (2) imposing a temporary restraining order pending the November 19 hearing, prohibiting Debtor and the auctioneer who conducted the sale, Michael Amodeo & Co., Inc., (the "Auctioneer") from distributing any auction sale proceeds.

On November 19, 2013, the Court held a hearing on, *inter alia*, the Emergency Motion. At the November 19 hearing, the Petitioning Creditors, through Mr. Popkin,[6] made an oral application to withdraw the involuntary petition and dismiss this case, again raising the specter

---

[4] See the Sanctions Order for a more complete history of the numerous prior bankruptcy filing by affiliates of the Debtor, and the prejudicial dismissal of those cases.

[5] See the Sanctions Order for a more complete discussion of the tactics employed in this case to avoid eviction by MHRP.

[6] The Court notes that in filed pleadings and throughout hearings in this case, Mr. Popkin provided conflicting statements on who he represents. When questioned by the Court at the November 19 hearing about the scope of his representation, Mr. Popkin unequivocally stated that he represents all of the petitioning creditors.

3

of impropriety. The Court denied that request on the record. MHRP then offered into evidence the Auctioneer's receipt from the sale showing that the auction sale had yielded net proceeds in the amount of $30,613.00 and that Mr. Bivona was in possession of these sale proceeds (the "Sales Proceeds"). Mr. Bivona then testified to the following: (1) an auction sale had occurred at the Property; (2) he had signed the auction receipt on Debtor's behalf, but that he was not Debtor's owner as reflected on the receipt; and (3) he had received approximately $29,500 in sale proceeds and still had them in his possession. Mr. Bivona also testified that he and his uncle Mr. DeJohn were creditors of Debtor and that the Sale Proceeds were generated from the sale of equipment owned by Manor East of Massapequa, LLC, a company he testified he and his uncle owned (and a prior chapter 11 debtor before this Court [case no. 12-71127-ast]).

At the conclusion of the hearing, the Court determined that regardless of the questionable route by which this case came before it, Debtor should be administered under chapter 7 by an independent trustee. The Court further determined that the Sales Proceeds should be safeguarded until this Court could determine to whom the funds legally belonged, as the bankruptcy estate appeared to have *prima facie* title to them as property of the bankruptcy estate under § 541 of title 11 of the United States Code (the "Bankruptcy Code"). The Court clearly and unambiguously directed Mr. Bivona from the bench to turn the Sales Proceeds over to the chapter 7 trustee, with ownership to be determined at a later date. Immediately following the hearing, the Court entered an Order restraining any disposition of the Sales Proceeds, and directing Mr. Bivona or any other party in possession of the auction proceeds to turn those funds over to the trustee (the "November 19, 2013 Order"). [dkt item 28] The Petitioning Creditors were served with the November 19 Order. [dkt item 29] No appeal was taken from the November 19, 2013 Order.

On November 22, 2013, the Court entered an order for relief under chapter 7. [dkt item 30]

On December 18, 2013, Kenneth P. Silverman was appointed as the chapter 7 trustee (the "Trustee").

*Mr. Bivona's repeated failures to comply with this Court's directives*

On January 29, 2014, the Trustee filed and served a declaration stating that Mr. Bivona had not complied with the November 19, 2013 Order to turn over the Sale Proceeds despite the Trustee's written demand that he do so (the "Motion"). [dkt item 35] The Trustee further sought entry of an order holding Mr. Bivona in civil contempt, but did not notice the Motion for hearing.

The Court initially scheduled a hearing on the Trustee's Motion for April 22, 2014. Mr. Bivona requested an adjournment to retain counsel, which the Court granted. He retained, Genevieve Lane LoPresti ("Ms. LoPresti"), who had previously represented Debtor in one of its prior chapter 11 cases and in other non-bankruptcy proceedings. Ms. Lopresti asked to adjourn the hearing due to various scheduling conflicts and personal matters, several of which the Court granted.

On June 3, 2014, over four months after the Motion had been filed and served, the Court held a hearing on the Motion. The Trustee appeared through his counsel. Ms. LoPresti appeared as Mr. Bivona's counsel, and Mr. Bivona appeared. At the conclusion of the hearing, the Court determined that it would conduct an evidentiary hearing on whether to hold Mr. Bivona in contempt.

On June 10, 2014, the Court issued an order scheduling an evidentiary hearing for August 4 and establishing certain pre-hearing requirements (the "Scheduling Order"). [dkt item 41] The Scheduling Order provided that a response to the Motion would be due by no later than

5

July 1, 2014 -- no response had been filed in the over four months that the Motion had been pending -- and that no pleadings filed after that deadline would be considered. The Scheduling Order further directed that, *inter alia*, the parties must exchange exhibits and file affidavits of direct testimony by no later than July 21, 2014.

The Scheduling Order was served on Mr. Bivona and Ms. LoPresti. [dkt item 42]

Mr. Bivona did not file a response to the Motion by the deadline.

On July 18 and July 23, 2014, Mr. Bivona, through Ms. LoPresti, filed affidavits of direct testimony of Messrs. DeJohn, Salvatore Cataldo, and Richard Ammons (the "Affidavits"). [dkt items 43, 44, 45, 45] None of the Affidavits address Mr. Bivona's failure to turn the Sale Proceeds over to the Trustee.

On July 24, 2014, the Trustee filed a supplemental declaration requesting, *inter alia*, the imposition of sanctions in the form of attorney's fees and the entry of an order for civil contempt without the need to conduct an evidentiary hearing based on Mr. Bivona's failure to respond to the Motion or provide any evidence in defense of his failure to turn over the Sale Proceeds. [dkt item 47]

On August 1, 2014, the Court notified the parties that the August 4 evidentiary hearing would proceed as a telephonic status conference.[7]

On August 4, 2014, the Court held a telephonic status conference on the Motion for which the Trustee and Ms. LoPresti appeared. Mr. Bivona had still not filed any response to the Motion. The Court admitted Mr. Bivona's Affidavits into evidence, which did not address Mr. Bivona's failure to turn over the Sale Proceeds since November 2013. As a result, the Court

---

[7] Late on August 1, 2014, the Friday before the August 4 Monday hearing, Ms. LoPresti filed a letter seeking an adjournment of the August 4 evidentiary hearing for thirty days due to a medical emergency that allegedly occurred on July 25, 2014. [dkt item 49] The Trustee opposed any further adjournment. On August 1, 2014, the Court notified the parties that the August 4 evidentiary hearing would proceed as a telephonic status conference.

issued an Order which, among other things, clearly and unambiguously directed Mr. Bivona to deliver the $30,613.00 of Sale Proceeds to the Trustee for safeguarding by no later than August 11, 2014.  The order further: (1) provided that in the event Mr. Bivona failed to deliver Sale Proceeds to the Trustee by August 11, 2014, beginning August 12, 2014, a sanction of $200.00 per day would be assessed against Mr. Bivona until the $30,613.00 was delivered to the Trustee; and (2) set an adjourned hearing on the Motion, including the Trustee's request for an award of attorney's fees, for October 7, 2014 (the "August 4, 2014 Order").  [dkt item 50]

On August 6, 2014, the Trustee served a copy of the August 4 Order on Ms. LoPresti as directed.  [dkt item 51]

No appeal was taken from the August 4, 2014 Order.

On October 7, 2014, the Court held the adjourned hearing on the Motion.  Only the Trustee appeared for the hearing.  The Trustee reported that Mr. Bivona had again failed to comply with the Court's prior orders to turn over the Sale Proceeds to him.  Based on the record before it, including Mr. Bivona's continued noncompliance and his failure to explain that non-compliance, the Court stated that it would hold Mr. Bivona in contempt.  The Court then directed the Trustee to file an affidavit memorializing his report to the Court and authorized him to file a statement of fees incurred in attempting to collect the Sale Proceeds.  The Court further authorized Mr. Bivona to file opposition to the Trustee's statement within fourteen (14) days of its filing, after which this Court would determine the reasonableness of the fees sought.

On October 21, 2014, the Trustee filed a fee statement and a declaration concerning Mr. Bivona's continued non-compliance.  [dkt item 52]  The Trustee stated that he had incurred $10,703.40 in attorney's fees and expenses as a direct result of Mr. Bivona's failure to turn over

the Sales Proceeds and his intentional efforts to frustrate the administration of the Debtor's estate. The Trustee served the declaration on Ms. LoPresti that same day.[8]  [dkt item 53]

### *The Court's Orders to show cause and related hearings*

On November 14, 2014, the Court entered an Order that, *inter alia*, held Mr. Bivona in civil contempt and directed him to appear and show cause on December 16, 2014, at 11:00 a.m.: as to (1) why the Court should not issue a warrant for his arrest directing the United States Marshals to take him into their custody and hold him in their custody until such time as he purges his civil contempt by turning the Sales Proceeds over to the Trustee, as a further coercive civil contempt sanction; and (2) why the Court should not request that the District Court for Eastern District of New York withdraw the reference under 28 U.S.C. § 157(d) for the limited purpose of consideration of issuing criminal contempt sanctions against him and/or for further civil contempt proceedings  (the "November 14 Order to Show Cause"). [dkt item 65]   The November 14 Order to Show Cause authorized Mr. Bivona to file a response by no later than December 9, 2014.

On November 17, 2014, the Trustee served a copy of the November 14 Order to Show Cause on Mr. Bivona and Ms. LoPresti by regular and certified mail. [dkt item 67]

On November 18, 2014, this Court entered a Judgment against Mr. Bivona in favor of this estate in the amount of Twenty Six Thousand Seven Hundred Three Dollars and Forty Cents ($26,703.40), representing $10,703.40 for the Trustee's reasonable attorney's fees incurred in attempting to collect the Sale Proceeds, plus $16,000 representing the $200 per day sanction

---

[8] To further demonstrate Mr. Bivona's litigiousness, on October 24, 2014, Ms. LoPresti filed a letter indicating her belief that "on August, 2014, this matter was removed to the Federal District Court." [dkt item 57] On October 31, 2014, the Trustee filed a letter stating that this bankruptcy case has not been removed to the District Court and that Mr. Bivona has not filed a motion to withdraw the reference pursuant to 28 U.S.C. § 157(d). [dkt item 63] No order withdrawing the reference of this bankruptcy case was ever entered by the District Court for the Eastern District of New York.

which accrued against Richard Bivona between August 12, 2014 and October 31, 2014 for failing to turn over the Sale Proceeds by August 11, 2014; the Trustee was also awarded post judgment interest at the federal rate pursuant to 28 U.S.C. § 1961 (the "Judgment").  [dkt item 68]

No appeal was taken from the Judgment.[9]

Mr. Bivona did not file a response to the November 14 Order to Show Cause.

On December 10, 2014, Ms. LoPresti sought to withdraw as Mr. Bivona's counsel of record; she filed a declaration requesting an emergency hearing and seeking to adjourn his deadline for him to file a response to the November 14 Order to Show Cause, and to stay of all matters in the case pending his retention of new counsel (the "Emergency Withdrawal Motion"). [dkt item 75]

On December 12, 2014, the Court entered an order scheduling a hearing on the Emergency Withdrawal Motion for December 16, 2014 at 11:00 a.m. (the "Emergency Order"), which directed Ms. LoPresti to serve a copy of the Emergency Withdrawal Motion and Emergency Order on Mr. Bivona by expedited means by December 12, 2014 at 5:00 p.m. and to file a certificate of service by December 15, 2014 at 12:00 p.m.  [dkt item 76]

Ms. LoPresti failed to comply with the Emergency Order.  On December 16, 2014, the Court held hearings on the November 14 Order to Show Cause and the Emergency Withdrawal Motion.  The Trustee by his counsel, Mr. Bivona, Ms. LoPresti, Mr. Popkin, and the Office of the United States Trustee through its counsel appeared.  Ms. LoPresti informed the Court that she did not serve the Emergency Withdrawal Motion on Mr. Bivona, and that she had not directly

---

[9] On November 26, 2014, the Trustee filed an Abstract of the Judgment and on December 10, 2014 filed an Amended Abstract of the Judgment. [dkt items 70 & 73]

expressed to him her desire to withdraw as his attorney. Mr. Bivona requested additional time to respond to the November 14 Order to Show Cause and to retain new counsel. Because of the seriousness of the issues, the Court granted Mr. Bivona's request.

To memorialize this adjournment, on December 19, 2014, the Court entered a Supplemental Order reiterating the directives of the November 14 Order to Show Cause, and scheduled a hearing thereon for January 13, 2015 at 2:00 p.m. (the "January 13 Hearing") (the "Supplemental OSC"). [dkt item 77]

On January 6, 2015, Ms. LoPresti filed a letter withdrawing her Emergency Withdrawal Motion [dkt item 80], as well as an unsigned Affidavit purporting to be from Mr. Bivona (the "Bivona Affidavit"). [dkt item 83]

On January 13, 2015 the Court conducted the adjourned order to show cause hearing. Richard Bivona and Ms. LoPresti appeared, as did counsel for the Trustee. First, the Court inquired of Ms. LoPresti as to the withdrawal of her Emergency Withdrawal Motion.[10]

Second, the Court addressed the merits of the contempt proceeding. Mr. Bivona was sworn in and testified that he had signed the original version of the Bivona Affidavit and affirmed all of its contents. Tr. at 11. The Affidavit was admitted as Exhibit 1. Tr. at 12. The

---

[10] THE COURT: In your motion to withdraw, you had indicated a concern of threats to your physical well being from Mr. Bivona –
MS. LOPRESTI: Yes, Your Honor.
THE COURT: -- although you advised the Court at the December 16 hearing that no such threats had actually been made directly to you.

Ms. LoPresti then stated:
MS. LOPRESTI: I spoke to, I spoke to an agent of the FBI and I spoke also to, (sic) that we've been in touch with, and I also spoke to a private investigator. We actually all met and spoke about what had transpired. And I am satisfied that it's been resolved….
*See* Transcript of the January 13 Hearing at 6:13-25 (the "Tr.") [dkt item 97]

Bivona Affidavit does not state that Mr. Bivona was unable to comply with the November 19, 2013 Order when it was entered.[11]

The Trustee was then permitted to cross examine Mr. Bivona. When asking Mr. Bivona if he was aware in November 2013 to turn over the auction Sales Proceeds, he testified as follows:

> Q. … Were you aware that Judge Trust had ordered you to turn over the proceeds from the sale that you conducted in 2013?
> …
> A. Yes, I was aware of the order that was cut from what I was told on November 19th and the sale was October 30th.
>
> Q. So you were aware that you were under an obligation to turn over those funds to the trustee.
>
> A. Yes I was. Yes, in front of Judge Trust, yes, at that time, yes.

Tr. at 21:23-22:11. Mr. Bivona then admitted he has not turned over the Sales Proceeds or any money to the Trustee. Tr. at 22:7-8.

The Court then inquired as to why Mr. Bivona had not turned over the Sales Proceeds:

> THE COURT: All right. Mr. Bivona, I ordered you on November 19th of 2013 to turn over $31,613 to the trustee. Why didn't you do that back in November of 2013?
>
> THE WITNESS: Your Honor, if I had the money I would have done it immediately. I did not have the money, the money was long gone. The sale was the 30th and there were debts that were incurred while the catering hall was under "contractual obligations."

---

[11] The Bivona Affidavit includes the following statements:
  12. I am a creditor, not the debtor in possession, with neither the means nor the assets to pay the fines. The monies were used to pay Vina DeVilla debts, including the new fence that was installed, etc. …
  13. In the instant matter, I have not violated any court orders. (Nov, 19, 2013, and August 4, 2014). The sale was conducted on or about October 31, 2013 (prior to the sale), from goods that I taken and removed from the Manor East. These were stored in a warehouse and were maintained for a time certain. These included tables, chairs, dishes, utensils, etc.
  14. I was not aware of any court orders prior to or during the sale. I should not be held in either civil or criminal contempt. The court had not issued an order to prevent the sale in the first place and second, the products that were sold were not within the ownership of the debtor.
[dkt item 83]

> We put all types of money into the building under the guise of a lease that was, that we were going to sign, i.e., fire marshal, concrete work, things that needed to be done pursuant to town orders.
>
> THE COURT: So is your testimony today that you did not have the $30,613 from the auction sale on or about November 19th of 2013?
>
> THE WITNESS: Your Honor, if I had that money, I would have brought it her personally. I've never missed a Court date, I have no disrespect for this Court whatsoever.
>
> THE COURT: And you weren't holding approximately $29,500 of the auction sale proceeds on the date of the November 19th, 2013 hearing –
>
> THE WITNESS: Absolutely not.

Tr. at 23:4-24.

Upon redirect examination by Ms. LoPresti, Mr. Bivona reiterated that he did not have possession of the Sales Proceeds when he was ordered to turn them over by this Court:

> When Judge Trust ordered approximately three weeks after, the easiest thing for me in the world to do at that point would have been to turn the money over. It would be my greatest joy to turn the money over just so I wouldn't be sitting here right now. There's nothing better I would rather do if I had it. That money was dispersed. It was dispersed.

Tr. at 29:16-22.

Thus, in spite of numerous proceedings having been held before this Court specifically related to the Sales Proceeds, Mr. Bivona, for the very first time in fourteen (14) months, testified on January 13, 2015, that he neither had the Sales Proceeds in his possession nor had them under his control on November 19, 2013. This testimony is simply incredible. First, it is unfathomable that Mr. Bivona would sit idly by for fourteen (14) months while he is being held in contempt, sanctioned at a daily rate of $200, and has a monetary Judgment entered against him, all based on an Order to turn over the Sales Proceeds that he now says he did not have at the time of the November 19, 2013 hearing. Second, his January 13, 2015 testimony directly

12

controverts his own sworn testimony given on November 19, 2013, at a time when the events were fresh, and when Mr. Bivona had been unequivocal that he still had possession of the Sale Proceeds:

> COURT REPORTER: Can you please state your name, and spell if for the record.
>
> MR. BIVONA: Richard Bivona, B-i-v-o-n-a.
> \*\*
> MR. BLANSKY: Okay. Your Honor, can I mark as an exhibit the 16 (sic) auctioneer's receipt? I think it's relevant to narrow [the] issue we're talking about.
>
> THE COURT: Yes. Do you have copies available?
>
> MR. BLANSKY: Yes, I have copies to hand to the Court, and give a copy to Mr. Popkin.
>
> THE COURT: All right. Fair enough.
> \*\*
> Q. Okay. I'm showing you a facsimile comprised of five pages. If you can turn your attention to the third page of that facsimile. Do you recognize the signature on that page? It is a receipt from the Michael Amodeo & Company, Inc., Auctioneers.
>
> A. Yes.
>
> Q. Whose signature is that?
>
> A. It's mine.
>
> Q. Okay. And did you have an opportunity to read this document before you signed it?
>
> A. I didn't read -- this wasn't there. The only think (sic) I signed was a sheet of inventory.
>
> Q. Well, did you receive money from –
>
> A. Absolutely.
>
> Q. -- Mr. Amodeo on November 4?
>
> A. Not himself. Someone else.
>
> Q. Okay, and how much in total did you receive from him that day?

> A. It was in increments. And I believe it was before November 4.
>
> Q. And how much in total did you receive from him?
>
> A. I think 29 and change.
>
> Q. Okay.
>
> A. In totality.
>
> Q. And were these funds –
>
> BY THE COURT:
> Q. Hang on a second. Twenty-nine and change? Can you all be more specific about that?
>
> A. I want to say twenty-nine, five, Your Honor?
>
> Q. Hundreds? Thousands?
>
> A. Twenty-nine thousand five hundred. I apologize.
>
> Q. All right, thank you.
>
> BY MR. BLANSKY:
> Q. And was it your understanding that there were proceeds of an auction sale at 1990's premises?
>
> A. Absolutely.
> **
>
> Q. Okay. And what happened to the approximately $29,500 of proceeds that you received from a Mr. Amadeo?
>
> A. I have it.

*See* Transcript from November 19, 2013 hearing, at 9:5-14:7. [dkt item 64]

Having observed Mr. Bivona testify at both hearings,[12] this Court rejects his January 13, 2015 revisionist testimony as false.

---

[12] The Trustee inquired of Mr. Bivona at the January 13 Hearing about his conflicting November 19, 2013 testimony:
> Q. You testified a little while ago that by the time the November 19th hearing occurred, you had already distributed all the money that you received. Right?

14

To date, Mr. Bivona has still not turned over the Sale Proceeds.

## Discussion

It is well settled that bankruptcy courts are vested with the inherent authority to enforce compliance with their orders through the issuance of civil contempt orders. *See* 11 U.S.C. § 105(a); FED. R. BANKR. P. 9020; *Rosen v. Breitner & Hoffman, P.C., (In re Flushing Hosp. & Med. Ctr.)*, 395 B.R. 229, 241 (Bankr. E.D.N.Y. 2008); *In re Chief Exec. Officers Clubs, Inc.*, 359 B.R. 527, 534 (Bankr. S.D.N.Y. 2007); *see also Solow v. Kalikow (In re Kalikow)*, 602 F.3d 82, 96-97 (2d Cir. 2010); *MA Salazar, Inc. v. Inc. Vill. of Atl. Beach*, 499 B.R. 268, 274-275 (E.D.N.Y. 2013). A court may only exercise this discretionary authority when (1) the alleged contemnor knowingly violated a court order that is clear and unambiguous,[13] (2) the proof of non-compliance is "clear and convincing," and (3) the alleged contemnor has not diligently attempted in a reasonable manner to comply with the order. *See United States v. Local 1804-1,*

---

A. Yes sir.
\*\*
Q. Okay. And I believe you also testified that if you had had the money on November 19th, you would have turned it over to the trustee.
A. There is absolutely no doubt whatsoever. [indiscernible] you've been very kind as to speak to me on numerous occasions.
**\*\***
Q. Do you recall testifying at the November 19th hearing that you on that date were in possession of $29,500 in proceeds that you had received from Mr. Armadeo (phonetic)?
A. Where you do see that, sir?
Q. I'm just asking if you recall testifying that you were in possession of the sale proceeds.
A. I recall -- no, what I recall is I was asked if I received the proceeds, and my answer was yes. Whether or not I had them that day, I don't recall, like in other words, that specific day at that time.
\* \*
Q. You understood that you were under oath on November 19th. Correct?
A. Yes I do.
Q. And you responded to Mr. Pilansky's (sic) question of what happened to the proceeds by saying, I have it. Is that correct?
A. It says it, so you're correct.
Q. Thank you.
Tr. at 34:1-22, 35:23-6-37:8.

[13] For an order to be clear and unambiguous, it must be reasonably clear "from the four corners of the order precisely what acts are forbidden" or required and must leave "no uncertainty in the minds of those to whom it is addressed". *In re Metz*, 231 B.R. 474, 480 (E.D.N.Y. 1999) (quoting *King v. Allied Vision, Ltd.*, 65 F.3d 1051, 1058 (2d Cir. 1995)).

*Int'l Longshoreman's Ass'n, AFL-CIO*, 44 F.3d 1091, 1096 (2d Cir.1995) (citing *New York State Nat'l Org. for Women v. Terry*, 886 F.2d 1339, 1351 (2d Cir.1989), *cert. denied*, 495 U.S. 947 (1990)).

Sanctions for civil contempt may be imposed both to coerce future compliance with a court order issued for another party's benefit and to "compensate for any harm that previously resulted" from the noncompliance. *Chief. Exec. Officers Clubs*, 359 B.R. at 534 (citing *Nat'l Org. for Women v. Terry*, 159 F.3d 86, 93 (2d Cir. 1998)). In fashioning an appropriate remedy, courts must consider "the nature of the harm and the probable effect of alternative sanctions". *Id.* at 536 (citing *EEOC v. Local 28, Sheet Metal Workers*, 247 F.3d 333, 336 (2d Cir. 2001)).

Courts may utilize incarceration as a coercive sanction for civil contempt, so long as "the contemnor is able to purge the contempt and obtain his release by committing an affirmative act". *See Int'l Union, United Mine Workers of Am. v. Bagwell*, 512 U.S. 821, 828-29 (1994) (internal citations and quotation marks omitted); *Hicks ex rel. Feiock v. Feiock*, 485 U.S 624, 635 n.7 (1988); *Lawrence v. Goldberg (In re Lawrence)*, 279 F.3d 1294, 1297 (11th Cir. 2002) (affirming bankruptcy court's imprisonment of a debtor for civil contempt for failing to comply with a turnover order); *In re CTLI, LLC*, 528 B.R. 359, 379 (Bankr. S.D. Tex. 2015) (directing the former majority owner of the debtor to relinquish control of its social media accounts, the failure of which would result in the issuance of a warrant for his arrest and his incarceration until he turned those accounts over as a civil contempt sanction); *In re Count Liberty, LLC*, 370 B.R. 259, 274 (Bankr. C.D. Cal. 2007) (stating that incarceration is an appropriate coercive sanction so long as "the contemnor can avoid the sentence imposed on him, or purge himself of it, by complying with the terms of the original order."); *Chief Exec. Officers Clubs, Inc.*, 359 B.R. at 536-537, 542-43 (the bankruptcy court determined that it had the authority, as a coercive civil

contempt sanction, to imprison an officer of the debtor until he returned funds improperly transferred from the debtor's bank accounts in violation of a court order).

The coercive sanction of incarceration is especially appropriate where (i) it is unlikely that increased monetary sanctions would improve the likelihood of compliance and (ii) there has been a pattern of noncompliance. *See In re Vaso Active Pharms., Inc.*, 514 B.R. 416, 426 (Bankr. D. Del. 2014) (collecting cases); *see also Souther v. Tate (In re Tate)*, 521 B.R. 427, 439-44 (S.D. Ga. 2014) (discussing the bankruptcy court's authority to impose and the propriety of imposing incarceration as a coercive sanction for civil contempt).

Mr. Bivona has knowingly violated this Court's final and non-appealable Orders that clearly and unambiguously directed him to turn the Sale Proceeds over to the Trustee. He continues to act in open defiance of and flagrant disregard for this Court's November 19, 2013 Order and August 4, 2014 Order, and the proof of his non-compliance is not only clear and convincing, it is overwhelming and blatant. Further, not only has Mr. Bivona not diligently attempted in any reasonable manner to comply with either the November 19, 2013 Order or the August 4, 2014 Order, he has continuously and willfully ignored those Orders. That Mr. Bivona would now have the audacity to falsely testify about not possessing the Sales Proceeds on November 19, 2013, is shocking and demonstrates that he simply has no respect for this Court and its procedures.

Finally, while not plead as a defense, this Court has considered whether Mr. Bivona has proven a defense of impossibility of complying with the November 19, 2013 Order when it was entered. The burden is on a contemnor to demonstrate "categorically and in detail" why they were unable to comply with an order of the court. *Oliner v. Kontrabecki (In re Cent. European Dec. Co.)*, 305 B.R. 510, 520 (N.D. Cal. 2004) (internal quotation marks and citations omitted);

*see United States v. Rylander*, 460 U.S. 752, 757 (1983) ("Where compliance is impossible, neither the moving party nor the court has any reason to proceed with the civil contempt action. It is settled, however, that in raising this defense, the defendant has a burden of production."); *see also Trading Comm'n v. Wellington Precious Metals, Inc.,* 950 F.2d 1525, 1529 (11th Cir. 1992) (noting that a contemnor must do more than merely assert an inability to comply but instead must establish that "he has made in good faith all reasonable efforts to meet the terms of the court order he is seeking to avoid.") (internal quotation marks omitted).

Mr. Bivona cannot avail himself of the impossibility defense, because "[t]he defense is not available, … 'when the person charged is responsible for the inability to comply.'" *Count Liberty, LLC*, 370 B.R. at 275 (quoting *United States v. Asay*, 614 F.2d 655, 660 (9th Cir. 1980)). Whatever disposition Mr. Bivona may have made of the Sales Proceeds after being ordered to turn them over is not a defense for his violation of this Court's Orders. He fully had the ability to turn the Sales Proceeds over on November 19, 2013, and he simply chose not to do so.

Having considered this serious matter in great detail, this Court concludes that there is no available lesser sanction than the coercive sanction of incarceration; given Mr. Bivona's conduct and his ignorance of prior monetary sanctions, it is extremely unlikely that any increased monetary sanctions would improve the likelihood of his compliance. He has exhibited a clear pattern of noncompliance and utter disregard for this Court's Orders, and the dignity of the judicial process.

**As such, if Mr. Bivona does not purge his contempt and turn the Sales Proceeds in the amount of <u>Thirty Thousand Six Hundred and Thirteen Dollars ($30,613.00)</u> over to the Trustee in good and valid funds by <u>June 22, 2015</u>, this Court will issue a warrant for his arrest directing the United States Marshals to take him into their custody and hold him in**

**their custody until such time as he purges his civil contempt by turning the Sales Proceeds over to the Trustee.**

Thus, based on the foregoing, it is hereby

**ORDERED**, that if Mr. Bivona does not purge his contempt and turn the Sales Proceeds in the amount of **Thirty Thousand Six Hundred and Thirteen Dollars ($30,613.00)** over to the Trustee in good and valid funds by **June 22, 2015**, this Court will issue a warrant for his arrest directing the United States Marshals to take him into their custody and hold him in their custody until such time as he purges his civil contempt by turning the Sales Proceeds over to the Trustee; if Mr. Bivona is arrested, once he files a letter with this Court clearly and unambiguously stating that he is ready, willing and able to immediately comply and to turn the Sales Proceeds over the Trustee, along with evidence of the source of the funds required to comply, the Court will schedule a further hearing to determine whether Mr. Bivona should be released from the United States Marshals' custody; and it is further

**ORDERED**, that on or before **June 25, 2015**, the Trustee shall file and serve an affidavit or affirmation as to whether Mr. Bivona purged his contempt and turned over the Sales Proceeds as required by this Order; and it is further

**ORDERED**, that the Trustee shall serve a copy of this Order on Mr. Bivona and Ms. LoPresti by regular and certified mail on or before **June 8, 2015**, and shall file an affidavit or affirmation of service on or before **June 11, 2015**.

**Dated: June 5, 2015**
**Central Islip, New York**

_____
**Alan S. Trust**
**United States Bankruptcy Judge**